[No. 60423-6-I. Division One. February 23, 2009.]

The State of Washington, *Respondent*, v. Omar Diaz-Flores, *Appellant.*

---

912

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 APPELWICK, J. — A person is guilty of voyeurism if he or she views another person for the purpose of sexual gratification where the other person has a reasonable expectation of privacy. The defendant here watched a man and a woman having sex from outside the couple's apartment, through the window blinds. Because the plain language of the statute protects each individual from any invasion of his or her privacy,

we hold the unit of prosecution to be each victim whose privacy is violated. The defendant was properly convicted of two counts of voyeurism, and his convictions do not violate double jeopardy. We affirm.

## FACTS

¶2 About 1:00 a.m. on July 6, 2006, a man walking his dog observed a person in a hooded sweatshirt step off the sidewalk and into the bushes behind a building at the Bellevue Meadows Apartments. The man called the police to report the activity. Officers Sanabria and Bradley arrived approximately 20 minutes later and searched the apartment complex area on foot.

¶3 Officer Bradley saw a male, Omar Diaz-Flores, peering into an apartment window with his hands near his waist. One hand was inside his unzipped pants, and he was rocking back and forth. When Diaz-Flores spotted the officers, he began to walk away. Upon stopping Diaz-Flores, the officers noted that Diaz-Flores's pants were still unzipped and that he appeared to have an erection. Officer Sanabria looked through a crack in the drawn blinds where Diaz-Flores had been standing and could see inside a bedroom, where a couple was having sexual intercourse.

¶4 Officer Bradley then contacted the man in the apartment. He told Officer Bradley that he and his wife were having sex in their bedroom and that no one had permission to watch.

¶5 Diaz-Flores was initially charged with one count of voyeurism. On the day of trial, the State moved to amend the information from one count of voyeurism to two counts—one count for the husband as a victim, and one count for the wife as a victim. The jury convicted the defendant of both counts of voyeurism. The judge sentenced him to concurrent standard range sentences of 6 months. Diaz-Flores timely appealed.

## DISCUSSION

I. Unit of Prosecution

■■ ¶6 The double jeopardy clause of the United States Constitution and the Washington State Constitution guarantee that no person shall be subject for the same offense to twice be put in jeopardy. U.S. CONST. amend. V; CONST. art. I, § 9. Double jeopardy is implicated when the court exceeds its authority and imposes multiple punishments where the legislature has not authorized them. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). When a defendant is convicted for violating one statute multiple times, the inquiry is what unit of prosecution the legislature intended to punish. *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). "When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." *Id.*

¶7 The voyeurism statute reads:

(2) A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:

(a) Another person without that person's knowledge and consent while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy; or

(b) The intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

RCW 9A.44.115.

■ ¶8 Diaz-Flores's challenge raises a question of statutory interpretation. Appellate courts review statutory interpretation de novo. *State v. Thomas*, 150 Wn.2d 666, 670, 80 P.3d 168 (2003). In determining the unit of prosecution, a court must first examine the plain language of the statute.

*Adel,* 136 Wn.2d at 635. If the statutory language is susceptible to more than one reasonable interpretation, a court may look to legislative history to determine legislative intent. *Christensen v. Ellsworth,* 162 Wn.2d 365, 372, 173 P.3d 228 (2007). Where the legislature has not clearly indicated the unit of prosecution in a criminal statute, the "lack of statutory clarity favors applying the rule of lenity." *Adel,* 136 Wn.2d at 635.

¶9 Diaz-Flores's plain language argument centers on the definition of "voyeurism." Because the definition is "[g]ratification derived from observing the sexual organs or acts of others," he argues that the unit of prosecution must be the unlawful viewing for sexual gratification, not the number of people in the room. BLACK'S LAW DICTIONARY 1572 (7th ed. 2003). The State argues that the plain language of the statute demonstrates the legislature's intent that the unit of prosecution be each victim whose right to privacy is violated, because the statute makes the crime victim specific, much like the reckless endangerment statute.

¶10 The court in *State v. Graham,* 153 Wn.2d 400, 407-08, 103 P.3d 1238 (2005), addressed a similar question about the unit of prosecution in the reckless endangerment statute, which provides that "[a] person is guilty of reckless endangerment when he or she recklessly engages in conduct not amounting to a drive-by shooting but that creates a substantial risk of death or serious physical injury to another person." RCW 9A.36.050(1). Looking to the legislature's use of "another person," as well as the nature of reckless endangerment as a crime against the person, the court held that the legislature had authorized the imposition of multiple sentences where the defendant's acts endanger multiple individuals. *Graham,* 153 Wn.2d at 407-08. Specifically, the court explained, "Because the unit of prosecution for the crime of reckless endangerment is each person endangered, not each endangering act, the State was entitled to charge Graham with three counts of reckless endangerment." *Id.* at 408.

■ ■ ¶11 The language that the *Graham* court interpreted to determine the reckless endangerment statute's unit of prosecution is identical to the language of the voyeurism statute. Both proscribe the act as it affects each victim, not just the course of conduct. Both statutes' use of "another person" instead of "any person" has specific import. " 'Any' . . . mean[s] 'every' and 'all'." *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991). "Another" means "different or distinct from the one first named or considered" ("another" as an adjective), and "one other than oneself" ("another" as a pronoun). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 89 (1993). In the context of the voyeurism statute, the reference to "another person" references the invasion of privacy of each person the voyeur views. *See Graham*, 153 Wn.2d at 413.

¶12 The court's determination of the unit of prosecution for robbery in *State v. Tvedt*, 153 Wn.2d 705, 712-13, 107 P.3d 728 (2005) also supports the conclusion that the unit of prosecution here is each person whose privacy is violated. In *Tvedt*, the court rejected the defendant's argument that the unit of prosecution of robbery is a course of conduct. The robbery statute states that "[a] person commits robbery when he unlawfully takes personal property from the person of another . . . ." RCW 9A.56.190. Looking to the plain language of the robbery statute, the court concluded that because the legislature defined the offense as the forcible taking of property from each victim, a separate conviction for each victim was lawful. *Tvedt*, 153 Wn.2d at 713. The same analysis applies to the voyeurism statute, where the legislature defined the offense as the surreptitious viewing of each victim for purposes of sexual gratification.

¶13 The plain language of the voyeurism statute establishes that the legislature intended the unit of prosecution to be each victim whose right to privacy is violated.[1]

---

[1] Although we need not analyze the legislative history because the plain language is decisive, we note that it suggests the same outcome. The Final Bill

Therefore, where Diaz-Flores watched two people having sex, his convictions for two counts of voyeurism—one for each victim—does not run afoul of double jeopardy.

## II. Sufficiency of the Evidence

■ ¶14 A reviewing court must affirm a conviction if " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A claim of insufficiency "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

■ ¶15 The parties dispute whether the evidentiary burden requires proof that the defendant was aroused by each person he viewed or proof that the purpose of the act of viewing was for sexual arousal or gratification. Diaz-Flores contends that the State failed to present evidence that the defendant was aroused or had gratified his sexual desires in viewing *both* the naked male and the naked female. The State responds that the jury found sufficient evidence that the defendant viewed both individuals with

---

Report in 1998 references invasions on a person's privacy. FINAL B. REP. on Substitute H.B. 1441, at 1, 55th Leg., Reg. Sess. (Wash. 1998), *available at* http://apps.leg.wa.gov/documents/billdocs/1997-98/Pdf/Bill%20Reports/House/1441-S.FBR.pdf. The House Bill Report reflects a specific concern about voyeurism victim's feelings of violation long after the event. H.B. REP. on H.B. 1441, at 3, 55th Leg., Reg. Sess. (Wash. 1998), *available at* http://apps.leg.wa.gov/documents/billdocs/1997-98/Pdf/Bill%20Reports/House/1441.HBR.pdf.

The legislature's 2003 amendment in response to *State v. Glas* further reflects concern for each victim of voyeurism, not just proscribing the act. 147 Wn.2d 410, 54 P.3d 147 (2002). In *Glas*, the court found that the language of the statute did not make unlawful "upskirt photography" if the victim was in a public place, because the definition of a "reasonable expectation of privacy" did not include public places. *Id.* at 414. Prompted by *Glas*, the legislature amended the statute to focus on the victim's reasonable expectation of privacy regardless of whether the victim was in a public or private space. *See* S. B. REP. on Engrossed Substitute H.B. 1001, at 1-2, 58th Leg., Reg. Sess. (Wash. 2003), *available at* http://apps.leg.wa.gov/documents/billdocs/2003-04/Pdf/Bill%20Reports/Senate/1001-S.SBR.pdf.

the *purpose* of arousing or gratifying his sexual desire, and that evidence that each victim aroused Diaz-Flores is not required.

¶16 Before determining whether there was sufficient evidence to convict Diaz-Flores for two counts of voyeurism, it is necessary to resolve whether the State had to prove that Diaz-Flores was aroused by seeing both the man and the woman, or that his purpose in viewing the couple was for sexual gratification (regardless of whether he was actually aroused by both the man and the woman).

¶17 Division Three of this court addressed a similar challenge to the sufficiency of the evidence on a voyeurism conviction in *State v. Glas*, 106 Wn. App. 895, 27 P.3d 216 (2001), *rev'd on other grounds*, 147 Wn.2d 410, 54 P.3d 147 (2002).[2] There, Glas had taken photographs under the skirts of two women. *Id.* at 899. Glas contended that there was insufficient evidence that his conduct was for sexual arousal or gratification. *Id.* However, the court explained that "[t]he statute requires only that the purpose of the behavior be to arouse or gratify in some manner some sexual desire of any person." *Id.* at 904 The logical inference of this statement is that the State does not have to produce evidence that the act *actually* aroused or gratified the defendant. As the court in *Glas* stated, "That commonsense reference [sic] followed from the evidence here, including Mr. Glas's statement that the photographs were ultimately destined for a pornographic Internet web site." *Id.*

¶18 Having established that the State was required to show only that the purpose of the act was for sexual arousal or gratification, the State had only to provide evidence of Diaz-Flores's purpose. Officer Sanabria testified that Diaz-Flores's face was pressed right up against the window, that his hands were in his "crotch area," and that he put his hands in his pockets when he heard the officers approach-

---

[2] The issue of the statute's unit of prosecution was not present, as Glas took "upskirt" photos of two different women at different times, so there was no basis on which to challenge the constitutionality of two convictions. *See Glas*, 106 Wn. App. at 899.

ing. Both officers testified that Diaz-Flores's zipper was down and it appeared that he had an erection. There was no evidence to suggest another purpose than sexual gratification.[3] The State is entitled to all inferences that reasonably can be drawn from the evidence. The evidence here overwhelmingly suggests that Diaz-Flores's purpose in watching the couple was for sexual arousal or gratification.

¶19 We affirm.

AGID and COX, JJ., concur.

Review denied at 166 Wn.2d 1017 (2009).

---

[3] The State notes Diaz-Flores's testimony that he was looking for friends that night at the Bellevue Meadows Apartments. However, he did not know their last names, their apartment number, or their telephone number. Whether Diaz-Flores was actually looking for friends is immaterial to his sufficiency of the evidence challenge. Once he saw the couple having sex, he continued to watch through the window. That is sufficient evidence of doing the act for purposes of sexual arousal or gratification.