212

[No. 65267-2-I.   Division One.   December 5, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. STEPHEN LEE HATCH, *Appellant*.

*Douglas R. Hyldahl* (of *Lester and Hyldahl PLLC*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Jeffrey D. Sawyer, Hilary A. Thomas*, and *Kimberly A. Thulin, Deputies*, for respondent.

---

¶1 BECKER, J. — Statements made in connection with an offer to plead guilty are protected from admission by ER 410. When a defendant sends the prosecutor a psychological evaluation of a type routinely used to facilitate consideration of a special sentencing alternative, it is objectively reasonable for the defendant to expect that his statements to the psychologist will be treated as made in connection with plea negotiations. This case demonstrates that a formal agreement to conduct plea negotiations is not a prerequisite for the application of ER 410. The trial court erred by admitting the defendant's statements. We affirm the convictions, however, because in the circumstances of this case, the error was not prejudicial.

¶2 Appellant Stephen Hatch was convicted on two counts of voyeurism. According to testimony at trial, the crimes were committed at a tanning salon in Bellingham. Hatch often requested a particular tanning room that was separated from the adjoining room by a wall that did not reach the ceiling. The tanning bed in the adjoining room was open to the sides and on top. On February 4, 2008, a woman who was tanning in the adjoining room heard the camera clicking and saw it at the top of the wall. She raised an alarm, and police apprehended Hatch as he was trying to leave the tanning salon. He was carrying a camera stuffed in his pants. The camera contained 10 sequential pictures of the woman's unclothed body. There were also 33 pictures of a different woman who had tanned in the nude in the same room on a previous date.

¶3 Trial was originally set for June 30, 2008. It was delayed for a year and a half. Hatch obtained an agreed continuance on June 18, 2008, and again on August 20, 2008, because he was in an evaluation process. On September 17, 2008, another continuance was granted because an evaluation report by Dr. William Coleman was expected shortly and Hatch wanted to present it to the State. On October 8, 2008, Hatch asked for a continuance of two weeks, stating that Dr. Coleman had promised to deliver the report that week. The deputy prosecutor suggested a continuance of one month, anticipating that the case could be set for a plea hearing earlier if "we get all the information we need."

¶4 The parties agreed to another continuance on November 4, 2008, indicating to the court that they needed another month to try to resolve the case. On December 3, 2008, the case was continued again upon the prosecutor's statement, "I think we are close to a resolution on this, Your Honor. At least that's my understanding from my last discussion with [defense counsel]." The record of court appearances over the next several months reflects that settlement discussions were ongoing. The court was informed that Hatch had completed his evaluation for a SSOSA (special sex offender sentencing alternative; *see* RCW 9.94A.670).

¶5 The parties agreed to schedule a plea hearing for May 14, 2009. A plea was not entered on that date. The record contains no further mention of a possible settlement. The case was continued for other reasons throughout the rest of the year and eventually went to trial on January 11, 2010.

¶6 The State listed Dr. Coleman as a witness. Before trial, the court considered a defense motion to preclude Dr. Coleman from testifying about statements Hatch made to him during the evaluation. The motion was based in part on ER 403, but the main issue was whether Hatch's statements were made in connection with plea negotiations. Such statements are barred by ER 410:

Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

ER 410(a). The prosecutor argued that the statements were admissible because when Hatch presented Dr. Coleman's report to the State, he had done it "not at my request, not at the court's request, but of his own volition." The court ruled that because the State had not previously agreed to consider recommending a SSOSA, Hatch's decision to send Dr. Coleman's report to the prosecutor was a unilateral act, not part of plea negotiations. Thus, ER 410 did not apply.

¶7 Before Dr. Coleman testified, the defense again objected under ER 410. The prosecutor reiterated that he had not suggested or requested the evaluation. He said he had discussed a SSOSA with Hatch only after receiving the evaluation report, not before. He said he had offered to let Hatch plead guilty to one count in exchange for dismissal of the other count but had never offered to recommend a sentencing alternative. Defense counsel responded that he had provided the report because he understood the prosecutor was waiting to see it and that was why there were so many agreed continuances. The court reaffirmed its ruling that there had been no plea negotiations; rather, the defense had provided the report to the State on its own initiative. Accordingly, Dr. Coleman was permitted to testify.

¶8 After the guilty verdict, Hatch renewed his ER 410 argument in an unsuccessful motion for a new trial. His motion was accompanied by declarations from several local defense attorneys attesting that it is common practice for defense counsel to advise a defendant to obtain a SSOSA evaluation prior to adjudication of his case and to provide the evaluation to the State for negotiation purposes without

obtaining an explicit waiver from the State agreeing not to use the report should the matter go to trial. Hatch assigns error to the court's decision to admit Dr. Coleman's testimony and its decision to deny his motion for a new trial.

¶9 The standard of review for a conclusion regarding the applicability of ER 410 is de novo. *State v. Nowinski*, 124 Wn. App. 617, 621, 102 P.3d 840 (2004). The purpose underlying the rule is to encourage the disposition of criminal cases through plea bargaining by allowing an accused to participate candidly in plea discussions, without the fear that his plea or plea-related statements will be used against him at trial. *Nowinski*, 124 Wn. App. at 628 (citing *State v. Jollo*, 38 Wn. App. 469, 472, 685 P.2d 669 (1984)). To determine whether a defendant's statements are related to plea negotiations, the court must determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time the statements were made and, second, " 'whether the accused's expectation was reasonable given the totality of the objective circumstances.' " *Nowinski*, 124 Wn. App. at 622 (quoting *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978)).

¶10 The State does not dispute that when Hatch provided Dr. Coleman's report to the prosecutor, he exhibited a subjective expectation that he was in plea negotiations. The issue is whether that expectation was objectively reasonable. In keeping with the rule's purpose of promoting plea negotiations, the assessment is to be made from the perspective of an ordinary person, not a lawyer. *Nowinski*, 124 Wn. App. at 628.

¶11 In *Nowinski*, the defendant was a suspect in a murder. During an interview with police, he voiced an interest in making a deal. A prosecutor was called in. The prosecutor said that any information he received during the interview would have to be evaluated back at the office before he could make a charging decision. The defendant made an inculpatory statement. The trial court ruled that it was not objectively reasonable for the defendant to believe he was involved in

plea negotiations. The defendant's statement was admitted and led to a conviction. This court reversed, holding that the statement was protected by ER 410:

> Nowinski manifested his desire to make a deal "so he wouldn't have to go to jail for a long time." The police called in the prosecutor. The prosecutor did not disabuse Nowinski of his expectation that a deal would be offered, but merely commented that no deal would be made "that night." From the perspective of an ordinary person, these circumstances made it objectively reasonable for Nowinski to believe that he was engaged in plea negotiations.

*Nowinski*, 124 Wn. App. at 629 (footnote omitted).

¶12 In this case, the State takes the position that plea negotiations do not occur until the parties formally agree that they are negotiating. This is similar to the rationale employed by the trial court in *Nowinski*, where the court found there was insufficient evidence of a quid pro quo and the defendant should have established the parameters of the interview before confessing. *Nowinski*, 124 Wn. App. at 623, 625. We rejected that rationale in *Nowinski*, 124 Wn. App. at 626-27, and we reject it again now. A quid pro quo is what parties reach if they are successful in negotiating a plea. It is not something they need to have before they can safely engage in negotiations. A prosecutor's bare assertion that the defendant supplied the inculpatory statements before plea bargaining began is not enough to avoid ER 410. The issue is whether the defendant sufficiently manifested his intent to negotiate before supplying the inculpatory statements to the State. *Nowinski*, 124 Wn. App. at 627-28.

¶13 The record of the many continuances shows that Hatch was trying to demonstrate he was a suitable candidate for a treatment-based alternative sentence. The prosecutor agreed that the trial should be continued to allow Hatch to complete the evaluation process. The prosecutor at one point suggested that the case would soon be set for a plea, "assuming we get all the information we need." This

course of conduct was inconsistent with the prosecutor's later profession of disinterest in obtaining Dr. Coleman's report. Hatch's expectation that the prosecutor wanted to look at the report before making a deal was objectively reasonable in light of the prosecutor's willingness to postpone the trial until the evaluation was completed.

¶14 The trial court accepted the State's erroneous argument that statements during a psychological evaluation are not protected unless the State has expressly requested the evaluation. The argument was based on *Jollo*, another case where a conviction was reversed on appeal because incriminating statements made by the defendant to a therapist were admitted. In *Jollo*, the prosecutor did ask that Jollo be evaluated concerning his amenability to treatment. But the prosecutor's request was not material to the holding in *Jollo*. Actually, *Jollo* supports Hatch. What both cases have in common is a defendant making statements to an evaluator in an attempt to induce a plea agreement. Where it is objectively reasonable for the defendant to believe he is making the statements in connection with an effort to negotiate a plea, statements to an evaluator are protected by ER 410.

¶15 In summary, the trial court erred by concluding ER 410 did not apply. Hatch's statements to Dr. Coleman should not have been admitted.

■■ ¶16 The improper admission of evidence is reversible error only if it results in prejudice. An evidentiary error is prejudicial if a reasonable probability exists that it materially affected the outcome of the trial. In assessing whether the error was harmless, we measure the admissible evidence of guilt against the prejudice caused by the improperly admitted evidence. *State v. Nelson*, 108 Wn. App. 918, 926, 33 P.3d 419 (2001), *review denied*, 145 Wn.2d 1026 (2002).

¶17 Dr. Coleman's testimony added little to what the jury already knew. Applying ER 403, the trial court re-

stricted Dr. Coleman's testimony to specific information that the prosecutor elicited with leading questions.

Q [By the prosecutor] On some occasion did you have a conversation with Mr. Hatch relating to incidents that took place at a tanning salon?

A Yes, I did.

Q Did he tell you that he took a digital camera with him to the tanning salon and got caught?

A Yes.

Q Did he tell you that he had gone to the tanning salon on eight to ten occasions total?

A I believe that is true.

Q Did he tell you that he had considered previously taking photos of women in the adjacent tanning booth and brought his camera to the salon on three occasions?

A Yes.

Q Did he tell you that he was successful in procuring photos of females in the next booth on two of those occasions?

A I believe that is true.

. . . .

Q Did he tell you about his sexual fantasies?

A Yes.

Q Did he tell you that most of those sexual fantasies were about his wife and women at the tanning salon?

A Yes.

Hatch did not cross-examine. The defense did not present witnesses or evidence.

¶18 The only element of the crime of voyeurism disputed by the defense was whether Hatch took the photographs for the purpose of arousing or gratifying the sexual desire of any person.[1] In closing argument, to support its proof of this element, the State used Hatch's statement that he had

---

[1] The jury was instructed that in order to convict Hatch of voyeurism on count 1, each of the following elements must be proved beyond a reasonable doubt:

sexual fantasies about women at the tanning salon. Hatch contends the statement that he had sexual fantasies about women at the tanning salon was significant to the State's proof of the disputed element and that there is a reasonable probability the jury would have found the proof insufficient if the statement had been excluded.

¶19 In two cases cited by Hatch, evidence that the defendant acted for the purpose of sexual gratification was arguably more clear-cut. In one case, the defendant pressed up against a window to watch a naked couple in their apartment; there was testimony that his zipper was open, it appeared he had an erection, his hands were in his crotch area, and he put them in his pockets when he heard the officers approaching. *State v. Diaz-Flores*, 148 Wn. App. 911, 918-20, 201 P.3d 1073, *review denied*, 166 Wn.2d 1017 (2009). In another case, the defendant took "up-skirt" photographs at a mall and admitted they were destined for a pornographic internet web site. *State v. Glas*, 106 Wn. App. 895, 904, 27 P.3d 216 (2001), *rev'd on other grounds*, 147 Wn.2d 410, 54 P.3d 147 (2002).

¶20 Still, a defendant's purpose of arousing or gratifying sexual desire can be readily inferred from circumstantial evidence. The jury heard that the tanning room where Hatch took the photographs was the same room he had often requested before. It had a cabinet next to the wall so

---

(1) That on or about the 4th day of February, 2008 the defendant knowingly viewed or photographed or filmed a second person or the intimate areas of a second person;

(2) That the viewing or photographing or filming was for the purpose of arousing or gratifying the sexual desire of any person;

(3) That the viewing or photographing or filming was without the second person's knowledge or consent;

(4)(a) That the second person was viewed or photographed or filmed in a place where he or she would have a reasonable expectation of privacy; or

(b) That the intimate areas of the second person were viewed or photographed or filmed under circumstances where he or she had a reasonable expectation of privacy; and

(5) That any of these acts occurred in the State of Washington.

Instruction 10. *See* RCW 9A.44.115(2). Count 2 was identical except for the date of the offense. Instruction 11.

that a person standing on the cabinet could point a camera into the adjoining room. The images of naked women in the pictures taken by Hatch included close-up pictures of each woman's genital areas, buttocks, and breasts, along with full body shots. When confronted by police as he was leaving the salon, Hatch at first attempted to hide his camera in his pants, but then turned it over to police and admitted what he had done. Even without Hatch's admission that he had sexual fantasies about women in the tanning salon, a reasonable jury could not have concluded on this record that Hatch had a purpose other than sexual gratification. Thus, the error of admitting statements protected by ER 410 was harmless.

¶21 Affirmed.

Cox and Lau, JJ., concur.