FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 FEB 12 AM 10: 50



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 75408-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ERIC CHARLES MASON, | ) | PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | FILED: February 12, 2018 |

SPEARMAN, J. — Eric Mason hid a video camera in the bathroom he shared with his stepsister and her husband. Over the course of a few months he filmed his stepsister on one occasion and her husband on three occasions. Once the filming did not capture anyone. A jury convicted Mason of four counts of voyeurism and one count of attempted voyeurism. On appeal, he claims that his multiple convictions for the same victim violated his double jeopardy rights, and that there was insufficient evidence that he filmed for the purpose of sexual gratification. He also argues that the prosecutor engaged in misconduct, that his counsel was ineffective, and that several of his conditions of community custody are unlawful. We agree with Mason's challenges to the conditions of community custody, but conclude that his other claims lack merit. We affirm his conviction, but remand for the trial court to strike, and/or amend the unlawful community custody conditions.

## FACTS

In the early morning hours of November 28, 2015, Jack Keend used the bathroom that he shared with his wife, Hannah, and her stepbrother, Eric Mason. He noticed a camera inside a wicker decoration on top of the toilet. Jack removed the camera and brought it to his father in law, Doug Peterson. They confronted Mason, who denied responsibility. Jack and Doug turned the camera on and watched video of Mason setting it up. Doug called the police. An officer came to the house and arrested Mason. In reference to the camera, Mason said to the officer, "[t]here's nothing on there." Verbatim Report of Proceedings (VRP) at 132.

A detective analyzed the contents of the camera, which contained five separate videos, four of which recorded Hannah or Jack in the bathroom. In the beginning of the first video, recorded on October 4, 2015 at 10:32 p.m., Mason is seen setting up the camera. The camera points toward the shower, and Hannah is seen from the shoulders up entering and exiting the shower.

Three other videos show Jack using the bathroom. Each begins with Mason setting up and angling the camera toward the door, so the whole bathroom can be seen. At a certain point, Jack enters the bathroom, urinates, and exits. These videos were recorded on October 6 at 9:50 p.m., October 7 at 10:41 p.m., and November 27 at 11:53 p.m. One video, recorded November 22 at 9:42 p.m., shows only Mason setting up the camera, with no other person entering the bathroom.

Mason was charged with four counts of voyeurism, one count of attempted voyeurism, and possession of methamphetamine. At trial, Mason admitted

filming, but said the videos were "not sexual at all." VRP at 227. He explained that his purpose was to make Jack feel violated because Jack had previously walked into Mason's room while his girlfriend was partially dressed. Mason also said that he was collecting video evidence that Jack cooked the family dinner after urinating and not washing his hands. Mason intended to make a presentation to the family "so they can digest their own dysfunction." VRP at 226.

Hannah testified that she always showered between 10:30pm and midnight. In closing, the State urged that the jury infer that the timing of Mason's recordings, all initiated between 9:42 p.m. and 11:53 p.m., showed his intent to capture Hannah undressed in the bathroom. The State also argued that the jury could infer Mason's purpose from his careful readjustment of the camera after his first attempt failed to capture Hannah's full body.

The jury convicted Mason as charged. His sentence included community custody conditions. The court also ordered that he pay a $500 victim assessment and $200 criminal filing fee. Mason appeals.

## DISCUSSION

### Double Jeopardy

Mason argues that the unit of prosecution for voyeurism is per victim, so his three voyeurism convictions for Jack violate double jeopardy. The State argues that the unit of prosecution here is per viewing, so the three recordings support three convictions. Because both parties are correct, Mason's claim fails.

Mason's double jeopardy claim raises an issue of statutory interpretation, which we review de novo. State v. Thomas, 150 Wn.2d 666, 670, 80 P.3d 168 (2003). The constitutional guaranty against double jeopardy protects a defendant

3

against multiple punishments for the same offense. U.S. Const. amend. V; Wash. Const. art. I, § 9. Double jeopardy is implicated when the court exceeds its authority and imposes multiple punishments where the legislature has not authorized them. State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). "When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." State v. Adel, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). The unit of prosecution may be an act or a course of conduct. State v. Tvedt, 153 Wn.2d 705, 710, 107 P.3d 728 (2005). To determine the unit of prosecution, we first examine the statute's plain language. Id.

The voyeurism statute reads:

(2) A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:

(a) Another person without that person's knowledge and consent while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy; or

(b) The intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

Former RCW 9A.44.115(2) (2003). "Photographs" or "films" is defined as "the making of a photograph, motion picture film, videotape, digital image, or any other recording or transmission of the image of a person." RCW 9A.44.115(1)(b).

The plain language of the statute criminalizes "the making of a ... film." Id. This shows legislative intent that the unit of prosecution be an instance of filming.

This reasoning was approved in State v. Ose, 156 Wn.2d 140, 146, 124 P.3d 635 (2005), which examined the second degree possession of stolen property statute and concluded that "the legislature unambiguously defined the unit of prosecution … as one count per access device by using the indefinite article 'a' in the clause 'a stolen access device.'" Similarly here, the legislature defined the unit of prosecution in the voyeurism statute as one count per filming by defining "films" as the making of a film. It unambiguously makes each instance of filming a separate violation of the statute.

Mason disputes that the statute permits a unit of prosecution that is per instance of filming. He contends that the correct unit of prosecution is per victim. In his view, the three counts involving Jack should have been charged as one count. In support of this contention, he relies on State v. Diaz-Flores, 148 Wn. App. 911, 201 P.3d 1073 (2009). In that case, Diaz-Flores was convicted of two counts of voyeurism after watching two people have sex with each other from outside the couple's apartment on a single occasion. Diaz-Flores, 148 Wn. App. at 913. We held that "[t]he plain language of the voyeurism statute establishes that the legislature intended the unit of prosecution to be each victim whose right to privacy is violated." Id. at 917. Mason's reliance on the case is misplaced, however, because there, unlike in this case, neither victim was viewed more than once. Thus we did not have occasion to consider whether double jeopardy precluded multiple punishments for the same victim viewed multiple times. As discussed above, now having considered that question in light of the statute, we conclude it does not. In addition to establishing the unit of prosecution to be each

victim, as we held in Diaz-Flores, the statute also clearly makes each instance of filming a separate criminal act.

Here, Mason made each recording separated by at least 24 hours, which are clearly distinct instances of filming that support multiple convictions. We hold that the convictions do not violate the prohibition against double jeopardy.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. See RCW 2.06.040.

## Sufficiency of the Evidence of Sexual Gratification

Next, Mason argues that there was not sufficient evidence to prove that he filmed for the purpose of sexual gratification. The State argues that there was sufficient circumstantial evidence of sexual gratification based on evidence that the filming began around the time that Hannah was known to take a shower.

On a sufficiency of the evidence challenge, we determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). A claim of insufficiency "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

The State must show that Mason filmed the bathroom "for the purpose of arousing or gratifying the sexual desire of any person. . . ." Former RCW 9A.44.115. "[A] defendant's purpose of arousing or gratifying sexual desire can be readily inferred from circumstantial evidence." State v. Hatch, 165 Wn. App. 212, 221, 267 P.3d 473 (2011). In a sufficiency analysis, circumstantial evidence

6

is not considered any less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (citing State v. Gosby, 85 Wn.2d 758, 539 P.2d 680 (1975)).

Over a two month period, Mason surreptitiously filmed the bathroom five times. Hannah showered between 10:30 p.m. and midnight, and the filming always began between 9:42 p.m. and 11:53 p.m. A rational juror could reasonably infer from this timing that Mason intended to film Hannah during her shower, and that his purpose was sexual gratification. In addition, Mason first pointed the camera straight toward the shower, and captured only brief, blurry images of Hannah from the shoulders up. Mason then adjusted the camera for a clear view of the entire bathroom.

Mason cites his own testimony to argue that he filmed for a nonsexual purpose. But Mason's explanations are immaterial to the sufficiency challenge. We consider the evidence in the light most favorable to the State, which provides sufficient circumstantial evidence to support a rational juror concluding beyond a reasonable doubt that Mason filmed for the purpose of sexual gratification.

Prosecutorial Misconduct

Mason argues that the prosecutor engaged in misconduct during closing statements by improperly shifting the burden to Mason to prove that he did not act for the purpose of sexual gratification.

To prove prosecutorial misconduct, the defendant must show that the prosecuting attorney's conduct was both improper and prejudicial. State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006). If the defendant does not object to the alleged misconduct at trial, the issue is usually waived unless the

7

misconduct was "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" Id. (Quoting State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997)). A prosecuting attorney's alleged improper remarks must be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). In closing argument, the prosecutor has wide latitude to argue reasonable inferences from the evidence, including evidence on the credibility of witnesses. State v. Thorgerson, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

During closing arguments in Mason's trial, the prosecutor discussed the instruction that members of the jury are the sole judges of the credibility of each witness. The prosecutor talked about Mason's credibility as a witness, providing the example of his initial denial when confronted by his family about the camera. The prosecutor then said,

> Does that sound like somebody who has a reasonable explanation for what they were doing?
> Sounds to me like somebody who is trying to distance themselves from the facts and circumstances of this case as much as they possibly can.
> And now he's saying that he was doing it for one of a number of reasons. To get back at Jack for walking into his bedroom. To prove that Jack wasn't washing his hands. To, you know, dysfunction. Prove dysfunction. Show the family that - that he was being wronged.
> Well, he's had about four months to think about it. It's an awfully convenient story at this point. Fills in the gaps quite nicely.

VRP at 301-02. The prosecutor went on to argue that this initial denial demonstrated that Mason's testimony about a nonsexual motive was not

8

credible. Mason argues that the quoted portion of the closing statement constitutes prosecutorial misconduct. In isolation, that section does ask the defendant to explain a lack of culpability. But viewed in the context of the argument as a whole that the State was discussing the defendant's credibility, which Mason placed at issue through his testimony. The State was entitled to rebut the defense theory in closing by discussing the defendant's credibility. There was no error.[1]

Conditions of Community Custody

Mason argues that the trial court abused its discretion when imposing certain community custody conditions. He contends that these conditions are not crime-related, are unconstitutionally vague, or violate his first amendment rights. Mason challenges the following conditions:

4. Do not possess or access pornographic material, as defined by the supervising CCO.

5. Do not enter any establishments whose primary business pertains to sexually explicit or erotic material.

6. Do not possess or control sexual stimulus material for your particular deviancy as defined by the supervising CCO and/or therapist except as provided for therapeutic purposes.

7. Do not possess cameras and video equipment, or any devices used to access the Internet on any computer or device unless such access is approved in advance by the supervising CCO and/or therapist. Any computer device is subject to search.

. . .

10. Participate in polygraph and plethysmograph examinations as directed by the supervising CCO.

---

[1] Mason also argues that his counsel's failure to object to this portion of the closing statement constitutes ineffective assistance of counsel. But because we conclude the comments were not improper, Mason cannot show that the failure to object was deficient representation. Accordingly, we reject his ineffective assistance claim.

Clerk's Papers (CP) at 48-49. (Emphasis added). The State concedes that conditions four and six must be stricken, as well as the portion of condition seven relating to the internet. (The State's concessions are underlined above.) We accept those concessions. We address the remaining contested conditions.

We review community custody conditions for abuse of discretion, and will reverse them only if they are manifestly unreasonable. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). An unconstitutional condition is manifestly unreasonable. Id. Sentencing courts may impose crime-related conditions of community custody. RCW 9.94A.505(9). This includes conditions that are reasonably related to the crime. Irwin, 191 Wn. App. at 656 (citing State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)). In addition to being related to the crime, conditions of community custody may not be unconstitutionally vague, with standards definite enough to protect against arbitrary enforcement. Id. at 652.

Mason argues that condition five, prohibiting entry into sex-related businesses, is not crime-related, is unconstitutionally vague, and violates his first amendment rights. In State v. Norris, 1 Wn. App. 2d. 87, 98, 404 P.3d 83 (2017), this court struck a similar condition for a defendant convicted of two counts of second degree rape of a 13 year old boy. This court reasoned that "there is no evidence in the record showing that frequenting sex-related businesses is reasonably related to the circumstances of the crime. . . ." Id. Similarly here, there is no evidence that Mason frequented sex-related businesses, intended to distribute his recordings, or had consumed voyeuristic material made by others. The trial court must strike condition five.

Mason argues that condition seven's contested portion, the prohibition against possessing recording devices, violates his first amendment rights. This community custody condition is reasonably necessary to accomplish the need of the State to protect its citizens from intrusion, and sufficiently specific and necessary to justify a potential restriction of Mason's freedom of speech. It does not violate the first amendment.

Mason argues that condition ten must be struck because plethysmograph testing may only be used for crime-related treatment. State v. Johnson, 184 Wn. App. 777, 340 P.3d 230 (2014) affirmed a condition identical to condition ten, but clarified that under State v. Riles, 135 Wn.2d 326, 345, 957 P.2d 655 (1998), plethysmograph testing may only be ordered for the purpose of sexual deviancy treatment. We decline the State's request that we uphold the condition with the clarification that plethysmograph testing may not be used for monitoring. As written, the condition is unlawful and unenforceable. But on remand the trial court may reimpose the requirement of plethysmograph testing so long as the testing is permitted for treatment purposes only.

Legal Financial Obligations

We review a decision to impose legal financial obligations (LFOs) for abuse of discretion. State v. Clark, 191 Wn. App. 369, 372, 362 P.3d 309 (2015), rev. granted, 187 Wn.2d 1009, 388 P.3d 487 (2017)).

Mason challenges the trial court's imposition of mandatory LFOs, arguing that the imposition conflicts with State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015). He maintains that the trial court erred in assessing the mandatory $500 victim assessment and $200 court costs without a determination of whether he

11

had the future ability to pay. Mason relies on <u>Blazina</u>, which requires an individualized inquiry for discretionary LFOs. The trial court here did not impose discretionary LFOs. We have previously held that <u>Blazina</u> does not apply to mandatory LFOs, and that a challenge to whether a LFO violates due process is not ripe for review until the State attempts to collect the obligation. <u>State v. Shelton</u>, 194 Wn. App. 660, 673-74, 378 P.3d 230 (2016), <u>rev</u>. <u>denied</u>, 187 Wn.2d 1002, 386 P.3d 1088 (2017)). The trial court did not err in assessing mandatory LFOs.

<u>Statement of Additional Grounds</u>

Mason advances several additional arguments in his statement of additional grounds. His arguments on sufficiency of the evidence and double jeopardy were adequately addressed by his counsel in the opening brief, so they are not proper for a statement of additional grounds under RAP 10.10. His remaining arguments lack merit.

Mason first argues that the prosecutor's objection to defense counsel's closing argument relieved the State of its burden and eroded the presumption of innocence. Mason objects to the following exchange:

> [Defense counsel:] The issue of arousal, gratification is a completely different issue. And the State has not introduced any evidence to show that my client would try to be aroused by his stepsister, by seeing his stepsister.
> Mr. Anderson: Objection, Your Honor. I think that's a misstatement of the law.
> The Court: Sustained.

VRP at 294. Mason contends that the trial court's ruling augmented the potential prejudice, because it gave judicial imprimatur to the prosecution's objection. We

fail to see how either the objection or the court's ruling thereon, shifted the burden of proof or eroded the presumption of innocence. We reject Mason's argument.

Mason next argues that the information was insufficient because it did not identify a specific victim for attempted voyeurism in count four. In addition to adequately identifying the crime charged, the charging document must allege facts supporting every element of the offense. State v. Nonog, 145 Wn. App. 802, 806, 187 P.3d 335 (2008) (citing State v. Leach, 113 Wn.2d 679, 689, 782 P.2d 552 (1989)). The charge must be defined sufficiently to apprise an accused with reasonable certainty of the nature of the accusation, such that the accused may prepare a defense and plead the judgment as a bar to any subsequent prosecution for the same offense. Id.

The charging document here alleged that Mason "did knowingly view, photograph, or film (a) another person, to wit: [INITIALS], 09/29/1968, without that person's knowledge and consent. . . ."[2] CP at 140. Where a crime involves a victim, but not a specific person, the identity of the victim is not an essential element of the crime. City of Seattle v. Termain, 124 Wn. App. 798, 805, 103 P.3d 209 (2004) (crime of violation of no-contact order involves a specific person, so the identity of the victim must be alleged in the information). So even without identifying the victim by name, the information adequately apprised Mason of the essential elements of the crime and the nature of the accusation.

_____

[2] This date of birth does not correspond to Hannah or Jack, but Mason does not argue that he was misled or prejudiced by this misidentification of the victim. Regardless, if the crime involving a private injury describes and identifies the act with sufficient certainty, an erroneous allegation as to the person injured is not material. RCW 10.37.090; State v. Plano, 67 Wn. App. 674, 680 n.2, 838 P.2d 1145 (1992).

Last, Mason argues his conviction should be reversed due to the cumulative effect of errors at trial. Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors results in a trial that is fundamentally unfair. State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Because Mason's challenges fail, he is not entitled to a new trial under the cumulative error doctrine.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

_Spelman, J._

WE CONCUR:

_Leach, J._

_Cox, J._

14