FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAR 11 AM 8: 15



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67904-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD G. BURK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 11, 2013 |
| | ) | |

VERELLEN, J. — Richard Burk appeals his conviction for voyeurism, arguing there was insufficient evidence to establish he actually took an "up-skirt" photo of the victim. He further argues there was insufficient evidence of the victim's lack of knowledge and consent. The State presented testimony that Burk placed a camera underneath the victim's skirt while she was shopping. When the store manager confronted Burk about his activity, Burk fled from the store and discarded his camera. The first photo police viewed on Burk's camera was an up-skirt photo. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, it is reasonable to infer that when Burk placed the camera underneath the victim's skirt, he took a picture. It is also reasonable to infer that had the victim did not consent. We affirm Burk's conviction.

## FACTS

On April 23, 2011, Claire's Boutique assistant manager Isaiah Lee observed Burk go to the back of the store, kneel down, and put a camera under the skirt of a woman "like he was taking a picture."[1] Lee confronted Burk about his actions, and Burk left the store. Lee notified mall security. Mall security officer Ian Geiger observed Burk running by his post and into Macy's. Geiger began to pursue Burk inside Macy's. Another security officer, Timothy Choi, was in the parking lot on bicycle patrol and saw Burk exiting Macy's. Both Choi and Geiger closed in on Burk in the mall parking lot.

Choi observed Burk throw a small black object onto the ground. After Choi and Geiger repeatedly told Burk to stop running, Burk finally stopped. Officer Donald Ames arrived in the parking lot moments later and detained Burk. Sergeants Gurr and Johnson arrived shortly thereafter. Geiger located the small black object Burk had thrown on the ground during the pursuit, and Burk eventually admitted the object was his digital camera.

Sergeant Johnson turned on the camera and viewed a few of the images, the first of which was an up-skirt photo of a female.[2] The police also recovered Burk's sweatshirt, which had been modified with a reinforced hole to accommodate the lens of the camera. After obtaining a search warrant, a Tukwila police detective obtained the photos from the camera, some of which were "taken from below the hemline of different

---

[1] Clerk's Papers at 49.

[2] Geiger testified that was standing "right next to" Sergeant Johnson when Johnson viewed the photographs. Geiger further testified that when Sergeant Johnson "turned on the camera, went to the photos that were stored on it, and the first picture that opened up was of a female's backside towards—angled up, trying to go up the skirt." Report of Proceedings (RP) (Sept. 26, 2011) at 115.

2

females' skirts, at an upward angle to capture the parts of the females' bodies intended to be covered by the skirts."[2]

The State charged Burk with one count of voyeurism. After a CrR 3.5 and CrR 3.6 hearing, Burk waived his right to a jury trial. Burk consented to submitting the case on the record, including the testimony and exhibits from the CrR 3.5 and CrR 3.6 hearing, the police reports, witness statements, photographs[3] and other materials. The court found Burk guilty and imposed a standard sentence. Burk timely appealed.

## DISCUSSION

### Sufficiency of the Evidence

A challenge to the sufficiency of the evidence presented at a bench trial requires us to review the trial court's findings of fact and conclusions of law to determine whether substantial evidence supports the challenged findings, and whether the findings support the conclusions.[4] Evidence is sufficient to support a conviction if, after viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational trier of fact could find each element of the crime proven beyond a reasonable doubt.[5] When challenging the sufficiency of the evidence, the defendant

---

[2] Clerk's Papers at 92. Of the 127 photographs contained on the camera's memory card, 13 were up-skirt photos, and the rest were of females' buttocks area and legs, fully clothed.

[3] Police placed the photographs onto a CD and then placed the CD into evidence. The court had before it "photographic exhibits," but these are not part of the record before this court. See Clerk's Papers at 89.

[4] State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). We review the conclusions of law de novo. Id.

[5] State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

admits the truth of the State's evidence.[6] We give great deference to the finder of fact in resolving conflicting testimony and weighing the evidence.[7] Circumstantial and direct evidence are accorded equal weight.[8] The unchallenged findings of fact from Burk's bench trial are verities on appeal.[9]

The charge of voyeurism required the State to prove each of the following statutory elements under RCW 9A.44.115(2)(b):

> A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:
>
> . . . .
>
> (b) The intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

Burk contends the evidence was insufficient to prove beyond a reasonable doubt (1) that he actually photographed the victim, and if so, whether that photograph was of the victim's intimate areas; and (2) that the victim knew of or consented to Burk's actions.

### Photograph of the Victim

Burk argues there is insufficient evidence to support the trial court's finding that he actually took an up-skirt photo when he placed the camera beneath the victim's skirt.

---

[6] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[7] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

[8] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[9] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

The statement of the store manager, Mr. Lee, is the only evidence in the record of Burk's actions inside the store.[10] Mr. Lee's incident statement form reads:

> Burk was in Claire's where I am an assistant mgr. I watched him because he came in buy [sic] himself and my manager thought she saw [a] camera. He goes to the back of the store kneeled down and put a camera under a girls [sic] skirt like he was taking a picture.[11]

The trial court finding states, "Claire's Boutique Assistant Manager Isaiah Lee, observed Defendant inside his store taking photographs up the skirts of unsuspecting females."[12]

The State presented evidence that Burk kneeled down and placed the camera underneath the victim's skirt. The State also presented evidence that Burk had 13 up-skirt photos on his camera, including the first photo that appeared when Sergeant Johnson turned on the camera. Drawing all reasonable inferences in favor of the State, sufficient evidence supports the trial court's finding that Burk actually took an up-skirt photograph of the victim inside Claire's.

Burk next challenges the finding that "Sergeant Johnson viewed a few images on the camera, the majority of which were of female shoppers from behind. Sergeant Johnson located on[e] image that appeared to be up the skirt of a female shopper."[13] Police could not identify the females in the photographs.[14] Burk argues that even if he

---

[10] Mr. Lee did not testify at the pretrial hearings.

[11] Clerk's Papers at 49.

[12] Clerk's Papers at 89 (Finding of Fact 1).

[13] Clerk's Papers at 92 (Finding of Fact 8).

[14] Detective Tom Stock testified, "There was no way to identify who the people in the camera were." RP (Sept. 28, 2011) at 234. Nor did the State did not introduce the metadata from the camera, which could have definitely established, via time stamp, which of the pictures was actually taken in Claire's.

did take a photo in Claire's, there was no way to definitely say that one or more of the up-skirt photos on the camera were of the intimate areas of the victim in Claire's.

But Burk ignores the combined weight of all the circumstantial evidence. Burk admitted ownership of the camera. There were multiple photographs of victims' intimate areas on the camera's memory card, including the first photo that appeared when police turned on Burk's camera which was taken, "at an upward angle to capture the parts of the females' bodies intended to be covered by the skirts."[15] And Mr. Lee saw Burk place the camera underneath this victim's skirt, providing the necessary angle to photograph the victim's intimate areas. Sufficient evidence supports the finding that Burk photographed the intimate areas of this particular victim.

*Victim's Lack of Knowledge and Consent*

Burk challenges the court's finding that he took the photo without the victim's knowledge and consent. The court found:

> Even though the females were never identified and therefore did not provide statements affirmatively establishing their lack of knowledge and consent to being photograph[ed], there is sufficient circumstantial evidence to establish this element. Based on the number of photographs taken of women from behind, as well as Defendant's reaction upon being confronted about his behavior—his flight from the store, through the mall, and out in to the parking lot, and further, attempting to discard the camera, jacket, and camera batteries all constitute circumstantial evidence that the females photographed were unaware of Defendant's actions and further, did not consent to being photographed.[16]

All of the facts Burk contests are contained in other unchallenged findings. The court found that Burk fled when Mr. Lee confronted him about Burk's activity with the

---

[15] Clerk's Papers at 92 (Finding of Fact 9).
[16] Clerk's Papers at 92 (Finding of Fact 10).

camera. As the two mall security guards chased Burk through the mall parking lot, Burk flung his camera to the ground. Burk's sweatshirt, which was admitted into evidence, had a "premade hole in it reinforced on the interior with rubber tubing to hold the hole's shape."[17] Although not described in the trial court's findings, the Tukwila Police Department evidence form describes the sweatshirt as having a "right outer pocket modified to fit camera."[18] Finally, of the 127 photographs contained on the camera's memory card, 13 were up-skirt photos, and the rest were of females' clothed buttocks area and legs, taken from behind.

Burk's challenge is, in essence, a challenge to the trial court's weighing of circumstantial evidence, not a challenge to the evidence itself. We give great deference to the finder of fact in weighing the evidence.[19] The court assessed each piece of circumstantial evidence—the types of photos on Burk's camera, Burk's flight from the mall, his discarding of the camera, and his sweatshirt modified to conceal his camera— and determined from this evidence the victims would have neither known of Burk's actions, or consented to them. We conclude the ample circumstantial evidence and the rational inferences therefrom are sufficient to support the trial court's finding on the victim's lack of knowledge and consent.

### Statement of Additional Grounds

Burk argues in his statement of additional grounds that because the victim was not involved in the prosecution, there is no evidence the event occurred without the

---

[17] Clerk's Papers at 92 (Finding of Fact 8).

[18] Clerk's Paper at 41. The form describes the sweatshirt as a jacket, but the record reflects only one clothing item entered into evidence.

[19] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

victim's knowledge or consent. Burk also argues that because the State did not introduce the metadata from the camera, there is no way to know if any of the photographs were actually taken on April 23, 2011, the date the State alleges the crime occurred. Because counsel raised similar arguments, our analysis above disposes of these two arguments.

Burke further contends that because the first several photos Sergeant Johnson viewed were not up-skirt photographs, and because the "the first image displayed is the last picture which was loaded on the camera's memory card," Burk did not actually take the up-skirt photograph of the victim in Claire's Boutique.[20] Contrary to Burk's argument, the record before us shows that when Sergeant Johnson turned on the camera, the first photo he saw was an up-skirt shot.[21] Burk's argument harms him more than it helps him.[22]

Burk finally argues that legislative history discussed in State v. Diaz-Flores[23] suggests the victim must be aware of actually being a victim, as "the House Bill report reflects a specific concern about voyeurism victim[s'] feelings of violation long after the event."[24] That discussion occurred in the context of our decision that the unit of

---

[20] Statement of Additional Grounds at 6.

[21] See RP (Sept. 26, 2011) at 35.

[22] Burk also argues the State cannot prove the intimate areas of the victim were photographed because there is no evidence the victim's areas were actually exposed underneath the skirt. The privacy interest extends to the intimate areas of the body, regardless of whether they are covered by undergarments.

[23] 148 Wn. App. 911, 918 n.1, 201 P.3d 1073 (2009).

[24] Statement of Additional Grounds at 8.

8

prosecution was per victim, not per act of voyeurism.[25] The plain language of the statute does not require that the victim be cognizant of her victimization.[26]

Affirmed.

WE CONCUR:

---

[25] Diaz-Flores, 148 Wn. App. at 916-18.

[26] See RCW 9A.44.115(2)(b).