FILED
COURT OF APPEALS
DIVISION II

2013 JUL 23 AM 9: 15

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>RAYMOND CLAIR CONNOLLY,<br><br>Appellant. | No. 42892-0- II<br><br><br>UNPUBLISHED OPINION |

JOHANSON, J. — Raymond Clair Connolly appeals numerous convictions stemming from his inappropriate contact with a minor. He claims (1) the trial court abused its discretion in excusing a juror after learning of the juror's potential bias, (2) insufficient evidence supports his three voyeurism and four indecent exposure convictions, and (3) ineffective assistance of counsel. We affirm all but one voyeurism conviction that lacked sufficient evidence. Accordingly, we remand for resentencing.

## FACTS

In June 2011, the State charged Connolly with a number of crimes, including multiple counts of voyeurism (counts 3-5) and indecent exposure to a victim under 14 (counts 6-9)— crimes dating back to June 2010 and involving his then-girlfriend's minor daughter, SMW. At trial, SMW testified that in the summer of 2010, while she lived with her mother and Connolly, she and her best friend, KAMG, were changing into their swimsuits in SMW's bedroom when KAMG saw Connolly watching them through a vent near the floor connecting SMW's bedroom and a bathroom.

SMW explained that nothing covered her bedroom vent during this time. After KAMG saw Connolly watching the girls change their clothes, SMW piled things in front of the vent to block anyone from peering into her bedroom from the bathroom. But Connolly and SMW's mother, MF, told her to clear the vent. Thereafter, on three occasions SMW caught Connolly watching her through the vent while she changed clothes.

SMW described another episode when she was showering at home. She got out of the shower and went to ask someone where to find the shampoo. She opened the bathroom door to find Connolly crouched down outside, then quickly walking away. SMW believed that Connolly was trying to watch her shower.

SMW also described a morning when she was asleep on the couch. She suddenly awoke when she felt someone lift her shirt. She turned her head and saw that the shirt had dropped and that Connolly was sitting next to her.

And according to SMW, between December 2010 and June 2011, two to three mornings a week Connolly entered her bedroom to wake her. "Every morning" when Connolly entered the bedroom, his penis was exposed through the open fly of his pajamas. 1 Report of Proceedings (RP) at 172. SMW explained that Connolly never said anything about his penis or touched it, and he never made sexual comments. On one occasion, however, SMW noticed that Connolly tucked his penis back into his pants when he left her bedroom. SMW estimated that Connolly exposed his penis roughly 70 times, but she never told anyone except KAMG and her stepsister.

KAMG corroborated SMW's testimony, describing the 2010 incident in which she noticed Connolly peering at the girls through the vent. She also regularly stayed overnight at SMW's house and after the vent incident, she saw Connolly's penis on 10 to 15 occasions. She

explained that Connolly did not say anything about his penis or sex, nor did he do anything with his penis or have an erection. But once she saw him pull his penis out through the fly of his pajamas upon entering SMW's bedroom. These episodes "creeped out" both KAMG and SMW, and as a result, SMW was afraid to live at MF's house anymore. 1 RP at 144.

Camas Police Officer Katie Brock testified that the vent cover in the bathroom had been "pried open." 2 RP at 223. Connolly told her that the vent cover appeared pried open when he moved into the house. Officer Brock also testified that Connolly denied spying on SMW through the vent, or spying on her as she showered. He initially told Officer Brock that he never noticed his exposed penis during his morning wakeup calls, but he then acknowledged that he had occasionally noticed his exposed penis in the morning after waking the girls.

Connolly and MF testified on Connolly's behalf. Connolly denied any wrongdoing, and he claimed that any penis exposure was accidental and a result of his small penis and open-fly pajamas. MF acknowledged that she had once reminded Connolly in the past to tuck his penis into his pajamas after it had fallen out.

Following MF's testimony, juror 11 alerted the trial court that he recognized MF because MF worked at a restaurant he frequented. The State questioned juror 11 to determine whether he could be impartial; but, Connolly had no questions for him. Juror 11 explained that he did not know MF personally; he stated, "I like her but I—I don't have a preconceived opinions [sic] about her." 2 RP at 283. When asked whether he would find her more credible because of his prior experience around her, juror 11 opined, "I don't think so. I don't know her that well." 2 RP at 283. The State moved to dismiss juror 11 in favor of an alternate, and Connolly

responded, "No, I think he's fine Your Honor." 2 RP at 284. The trial court denied the State's motion.

Later, the trial court reconsidered the State's motion to dismiss juror 11 stating it had researched relevant case law and statutes. The trial court explained,

> I would consider the statements of the Juror Number Eleven to be one of bias in a favorable sense . . . in favor of the witness that I like her, that would tend from a personal opinion outside the courtroom and the evidence presented in court to be a factor in evaluating her testimony.

2 RP at 291-92. The trial court continued, "I would also note for the record that I observed a hesitation on [juror 11's] part when asked if he thought he could be fair. He said he thought so but he said I like her. So I think that expressed a hesitation on his part under the circumstances." 2 RP at 292. Before summoning juror 11 back into the courtroom to dismiss him, Connolly stated, "And just for the record I am—am opposed to that but I've already said that." 2 RP at 293. The trial court then dismissed juror 11 in favor of the alternate. The jury then convicted Connolly on each of these voyeurism and indecent exposure counts. Connolly appeals.

## ANALYSIS

### I. Juror Disqualification

Connolly argues that the trial court abused its discretion in disqualifying juror 11 without a showing of misconduct or an inability to serve as a juror. Assuming, without deciding, that Connolly preserved this issue for appeal, he does not demonstrate that the trial court abused its discretion.

We review a trial court's decision to dismiss a juror for an abuse of discretion. *State v. Elmore*, 155 Wn.2d 758, 768, 123 P.3d 72 (2005). A trial court abuses its discretion when it

4

bases its decision on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to trial by an impartial jury. *State v. Gonzales*, 111 Wn. App. 276, 277, 45 P.3d 205 (2002), *review denied*, 148 Wn.2d 1012 (2003). RCW 2.36.110 states that a judge has a duty "to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice . . . or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110 does not require the trial court to find that a juror committed "misconduct" in order to dismiss a juror. *See State v. Depaz*, 165 Wn.2d 842, 856, 204 P.3d 217 (2009). But because the trial court is able to observe a juror, the trial court is in the best position to evaluate a juror's candor and his ability to deliberate. *Elmore*, 155 Wn.2d at 769 n.3. Accordingly, "so long as the trial court has applied the proper legal standard of proof to the evidence, the trial court's decision deserves deference." *Elmore*, 155 Wn.2d at 768-69.

The trial court did not abuse its discretion because it properly applied the legal standard of proof and reasonably articulated how it decided to dismiss juror 11. The trial court cited RCW 2.36.110, which allows a trial court to excuse a juror when it believes a juror is unfit due to bias or prejudice, and the trial court opined that MF was an "important" defense witness. 2 RP at 291. And because juror 11 viewed MF favorably based on interactions with her at the restaurant, the trial court expressed concerns whether juror 11 may factor his favorable impression in evaluating MF's testimony. The trial court also noted juror 11's demeanor: "I observed a hesitation on [juror 11's] part when asked if he thought he could be fair. He said he thought so

5

but he said I like her." 2 RP at 292. Juror 11's hesitation in answering these questions gave the trial court cause for concern, and because the trial court observed juror 11, it was in the best position to evaluate his candor and ability to deliberate. *See Elmore*, 155 Wn.2d at 769 n.3.

A trial court may excuse a juror who is unfit for jury service due to personal bias. Juror 11 expressed a favorable opinion of an important witness and hesitated when answering questions relating to whether he could fairly sit on the jury. Accordingly, the trial court did not abuse its discretion or violate Connolly's right to an impartial trial.[1]

## II. Sufficiency of Evidence

Next, Connolly claims that the State presented insufficient evidence to support his convictions for three counts of voyeurism and four counts of indecent exposure. We conclude sufficient evidence supports all of the indecent exposure convictions and all of the voyeurism convictions except the conviction based on allegedly watching SMW shower.

## A. Standard of Review and Rules of Law

We review insufficient evidence claims for whether, when viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Sufficiency challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. *Salinas*, 119 Wn.2d at 201.

---

[1] In his reply brief, for the first time Connolly cites RCW 4.44.170 and a series of cases to support his assertion that the trial court abused its discretion in excusing juror 11. We decline to consider arguments made for the first time in a reply brief. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

The trier of fact makes credibility determinations, and we will not review those determinations. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We also defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

### B. Voyeurism

To prove voyeurism, the State had to show that Connolly (1) knowingly viewed SMW without her knowledge or consent while (2) she was in a place where she had a reasonable expectation of privacy,[2] or that Connolly viewed SMW's intimate areas[3] without her knowledge or consent where she had a reasonable expectation of privacy, whether in a public or private place. *See* RCW 9A.44.115(2). And, the State had to prove that Connolly (3) viewed SMW to arouse or gratify his sexual desires. *See* RCW 9A.44.115(2). The State need not prove that a defendant was actually aroused, but that the purpose of the voyeurism was for sexual arousal or gratification. *State v. Diaz-Flores*, 148 Wn. App. 911, 919, 201 P.3d 1073, *review denied*, 166 Wn.2d 1017 (2009).

### 1. Vent Watching

First, the jury convicted Connolly of voyeurism for watching through a vent as SMW changed her clothes in her bedroom. SMW testified to seeing Connolly peering at her through a

---

[2] A place where one has a reasonable expectation of privacy includes places where a reasonable person would believe she could disrobe in privacy without surveillance. RCW 9A.44.115(1)(c).

[3] "Intimate areas" includes portions of a person's body or undergarments covered by clothing and intended to be protected from public view. RCW 9A.44.115(1)(a).

vent just above the floor between her bedroom and the bathroom on multiple occasions. KAMG testified that she had also seen Connolly staring through the vent when she and SMW were changing into their swimsuits.[4] SMW testified that her bedroom vent lacked a cover; she also provided that she tried blocking her vent, but MF and Connolly ordered her to remove anything covering the vent. Officer Brock added that the bathroom vent cover was pried open, allowing greater visibility. Accordingly, a rational trier of fact could find that Connolly knowingly viewed SMW without her consent or knowledge while she was in her bedroom, a place where she had a reasonable expectation of privacy.

Further, a reasonable juror could infer that because Connolly watched SMW when she changed her clothes, he desired to see her in various stages of undress, when her intimate areas may be visible. Moreover, when one considers the vent-spying along with Connolly's exposed-penis wakeups, the inferences that Connolly viewed SMW changing her clothes for the purpose of sexual arousal or gratification become even stronger. Reviewing this evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found that Connolly committed voyeurism with the purpose of sexual arousal or gratification when he watched through a floor-level vent as SMW changed her clothes in her bedroom. Therefore, sufficient evidence supports this conviction.

### 2. Shower Watching

Second, the jury convicted Connolly of voyeurism for watching SMW while she showered. SMW testified that while showering, she climbed from the shower, wrapped herself

---

[4] Count 2, not challenged for sufficiency on appeal, involved Connolly's voyeurism for viewing SMW *and* KAMG as they changed.

in a towel, and went to ask someone about finding shampoo. She opened the bathroom door and saw a crouching Connolly outside, quickly walking away. Even considering this evidence in the light most favorable to the jury's verdict, the evidence is insufficient to allow any rational trier of fact to find the essential elements of voyeurism. There is no evidence that Connolly actually watched SMW while she showered. SMW testified that she had to open the door when she got out of the shower. No testimony refutes Connolly's testimony that one could not see through the door because it was solid wood. Also, no testimony suggests a keyhole, crack, or gap in the door jamb or below the door that would allow one to look inside; and, no evidence suggests that Connolly opened the door at any point.

Taken in the light most favorable to the jury's verdict, the evidence merely demonstrates that Connolly was outside a solid wooden bathroom door, crouching, when SMW opened it. Accordingly, insufficient evidence supports Connolly's conviction for voyeurism for watching SMW shower.

### 3. Shirt Lifting

Third, the jury convicted Connolly of voyeurism for lifting SMW's shirt while she slept on the couch to view her breasts, an intimate area. SMW testified that while asleep on the couch, she suddenly awoke because she felt someone lifting her shirt. She turned her head and saw that her shirt had dropped and that Connolly was sitting next to her. Accordingly, a rational trier of fact could find that Connolly knowingly viewed the sleeping SMW without her consent or knowledge by lifting her shirt to see her breasts, an intimate area.

And again, when one considers that Connolly lifted SMW's shirt to see an intimate area, especially in light of his exposed-penis wakeups, a rational trier of fact could reasonably infer

that Connolly lifted SMW's shirt for the purpose of sexual arousal or gratification. Sufficient evidence supports Connolly's conviction.

## C. Indecent Exposure

Next, Connolly claims that the State presented insufficient evidence to convict him of four counts of indecent exposure as alleged in counts 6-9 because the State did not prove that Connolly intended to expose himself or that he knew his exposure would cause reasonable affront or alarm to SMW.[5] We disagree.

Under RCW 9A.88.010, a person is guilty of indecent exposure if he (1) intentionally makes any open and obscene exposure of his person, and that conduct is (2) likely to cause reasonable affront or alarm. An open or obscene exposure is a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in others' presence. *State v. Vars*, 157 Wn. App. 482, 490, 237 P.3d 378 (2010). To prove reasonable affront or alarm, the State need not show that the victim experienced shame or distress resulting from the defendant's conduct, or that the victim expressed such emotions to the defendant; it is enough that the defendant's act was "such that the common sense of society would regard the specific act performed as indecent and improper." *State v. Eisenshank*, 10 Wn. App. 921, 924, 521 P.2d 239, *review denied*, 84 Wn.2d 1003 (1974).

Based on the evidence here, a rational jury could find that Connolly intentionally exposed his penis to SMW on numerous occasions, and that the penis exposure was not only likely to cause reasonable affront or harm to SMW, but actually did. SMW testified that from December

---

[5] The jury convicted Connolly of indecent exposure to a victim under 14 years of age, a gross misdemeanor. *See* RCW 9A.88.010(2)(b). Connolly does not dispute that SMW was younger than 14 during the alleged events.

2010 until June 2011, Connolly woke her two to three mornings a week, and every one of these roughly seventy mornings, Connolly exposed his penis. KAMG also testified to seeing Connolly's exposed penis 10 to 15 times when she stayed overnight with SMW. While one may reasonably believe that Connolly's penis accidentally fell from his open fly on rare occasion when he wore a poorly designed pair of pajamas, it is not reasonable that it would accidentally fall from his open fly every morning, unnoticed, roughly 70 times over a six-month period, regardless of the pajamas he wore.

Moreover, KAMG testified that she once saw Connolly pull his penis out through his open fly when he entered SMW's bedroom to wake the girls. And SMW testified that she once noticed Connolly tuck his penis back into his pants when he left her room. This testimony rebuts any contention that Connolly's penis exposure was purely accidental and unknown to him. Accordingly, a rational trier of fact could find that Connolly intentionally made an open and obscene exposure of his penis.

Next, the evidence must prove that his exposed penis was likely to cause SMW reasonable affront or alarm. A reasonable person would understand that exposing a penis to a minor girl would likely cause reasonable affront or alarm. And in SMW's case it actually caused affront and alarm. KAMG testified that Connolly's behavior "creeped out" both she and SMW, and that SMW feared staying at MF's house after these events and tried to avoid thinking about Connolly and his penis. 1 RP at 144. Accordingly, a rational trier of fact could find that Connolly's open and obscene conduct was likely to cause SMW's reasonable affront and alarm. Therefore, sufficient evidence supports Connolly's convictions in counts 6-9.

### III. Ineffective Assistance of Counsel

In his statement of additional grounds,[6] Connolly asserts that defense counsel provided ineffective assistance by failing to investigate and only calling two witnesses. Connolly's claims lack merit.

To succeed on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's conduct was deficient; and (2) the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel is presumed to have acted reasonably unless shown otherwise. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). In order to show prejudice, the defendant must demonstrate that it is reasonably probable that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If the ineffective assistance claim fails on one prong, "the court need not address the other prong." *State v. Staten*, 60 Wn. App. 163, 171, 802 P.2d 1384, *review denied*, 117 Wn.2d 1011 (1991).

Generally, an attorney's decision to call a witness to testify is a matter of legitimate trial tactics, which will not support an ineffective assistance claim. *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981). But one can overcome this presumption by demonstrating that counsel failed to adequately investigate or prepare for trial. *Byrd*, 30 Wn. App. at 799.

Here Connolly must rebut the presumption that defense counsel acted competently and demonstrate that counsel deficiently performed. He does not do that. He cites nothing in the record to demonstrate how defense counsel failed to investigate or who defense counsel should have called to testify. Therefore, he does not overcome the presumption that defense counsel

---

[6] RAP 10.10.

used legitimate trial tactics and he cannot demonstrate deficient performance or ineffective assistance. *See Byrd*, 30 Wn. App. at 799.

We affirm in part, reverse in part, and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, J.

We concur:

Worswick, C.J.

Tollefson, J.P.T.