IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80225-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL CHAD SPIEKER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Michael C. Spieker seeks reversal of his conviction for vehicular homicide, arguing that the trial court denied him a fair trial by admitting two photographs of the deceased victim, Staci Laugle. He contends that these images were prejudicial and unnecessary to the State's case because the cause and manner of Laugle's death were not in dispute. Because the court did not abuse its discretion in weighing the probative value of the photographs against their prejudicial effect, we affirm the conviction. However, we remand to strike the supervision fees from the judgment and sentence.

FACTS

On September 1, 2017, Michael Spieker was driving in Mountlake Terrace with Staci Laugle in the passenger seat. Spieker lost control of his vehicle while passing another car driven by Robert Nakao. Spieker's car jumped the sidewalk and crashed into a tree. The hood of the car caught fire. Nakao pulled his car off

the road and ran to help. A witness who was parked on the side of the road and two neighbors who heard the crash also ran to help. Nakao helped Spieker out of the car. The passenger side door and seat belt were jammed, so Nakao and one of the neighbors pulled Laugle out of the vehicle. Laugle's shirt came off while she was being pulled from the car. Laugle was not responsive, and the other neighbor immediately began performing CPR.[1] Emergency personnel arrived and declared Laugle deceased at the scene.

Spieker was charged with vehicular homicide based on two of the three subsections contained in the statute: driving while under the influence (DUI) and recklessness. The court granted Spieker's request for a jury instruction on the third subsection, disregard for the safety of others, as a lesser included offense. Before trial, defense counsel moved to exclude two photographs of Laugle's face and body taken at the scene of the crash. Spieker did not dispute that Laugle had died of a broken neck as a result of the crash. The prosecutor stated that he intended to show two close up photographs, one of Laugle's face and another showing seatbelt marks on her body, to avoid showing Laugle's unclothed torso. The court permitted the photographs, finding that their probative value outweighed any resulting prejudice.

The jury found Spieker guilty of vehicular homicide and returned a special verdict that he was operating the vehicle in a reckless manner. The court imposed a high-end sentence of 102 months imprisonment and 18 months community custody. Defense counsel requested that the court order only the mandatory fees

---

[1] Cardiopulmonary resuscitation.

and the agreed restitution because Spieker was indigent. The court imposed the mandatory $500 victim penalty and $100 DNA sample fee and stated that it would "waiv[e] other financial obligations, which is only another $200, based on indigency." The judgment and sentence included a preprinted term of community custody requiring Spieker to pay supervision fees. Spieker appealed.

ANALYSIS

I.    Admission of Photographs

Spieker contends that the trial court erred in admitting the photographs of Laugle because they were irrelevant, inflammatory, and improperly prejudicial. He argues that the admission of this evidence denied him a fair trial. We review a trial court's admission of evidence for abuse of discretion. City of Auburn v. Hedlund, 165 Wn.2d 645, 654, 201 P.3d 315 (2009). Improper admission of evidence is reversible error only if it is prejudicial. State v. Hatch, 165 Wn. App. 212, 219, 267 P.3d 473 (2011). Evidentiary error is prejudicial if there is a reasonable probability that it materially affected the outcome of the trial. Id.

We first address Spieker's contention that the photographs were irrelevant. Evidence must be relevant to be admissible. ER 402. Relevant evidence is that which has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable. ER 401. To prove the charge of vehicular homicide, the State had to prove beyond a reasonable doubt that Laugle died as a proximate result of the injuries caused by Spieker's operation of the vehicle. See RCW 46.61.520. Spieker argues that there was no dispute that Laugle died as a result of the crash and the cause of her death was not at issue.

The State responds that, although defense counsel agreed before trial that Laugle died of a broken neck and indicated that Spieker would not challenge the testimony of the forensic pathologist, there was no stipulation as to any element of the charge.

In its ruling, the trial court explained why it considered the photographs relevant to proving the cause of Laugle's death:

> [T]he State has a burden to prove that this accident was the cause of death. And although it's not the only proof, in particular the seat belt bruising may confirm that the impact was such that it would match up with the injuries that are going to be testified to with the ring fracture. In addition, a witness has testified about blood, whereas the first witness was[,] I thought[,] confusing. He seemed to say the passenger got out on their own esteem [sic]. . . . I think this is confirmation that that person was mistaken. The passenger did not get out on her own. And again, the blood is confirming that this was— the cause of death here was the accident and physical injuries as opposed to something else.

Despite the fact that Spieker did not contest the cause of Laugle's death, the State still had the burden to show the causal connection to the accident. The photographs showing Laugle's injuries were probative of this point. The court did not abuse its discretion in determining the photographs to be relevant.

Even if evidence is relevant, the court may exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403. "'[U]nfair prejudice' is that which is more likely to arouse an emotional response than a rational decision by the jury." State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (quoting State v. Gould, 58 Wn. App. 175, 183, 791 P.2d 569 (1990)).

When analyzing the admission of gruesome crime scene photographs, the Washington Supreme Court has "reversed the customary presumption of admissibility under ER 403 and held that they are admissible if the probative value outweighs the prejudicial effect." Hedlund, 165 Wn.2d at 655 (citing State v. Crenshaw, 98 Wn.2d 789, 806–07, 659 P.2d 488 (1983)). The court has cautioned prosecutors that they should "use restraint in their reliance on gruesome and repetitive photographs" because they "are not given a carte blanche to introduce every piece of admissible evidence if the cumulative effect of such evidence is inflammatory and unnecessary." Crenshaw, 98 Wn.2d at 807.

Here, the State offered only two photographs showing different parts of Laugle's body. The photographs were not repetitive. The trial court acknowledged the prejudicial effect of the gruesome photographs and noted that it was "limiting the number also to limit the prejudice." The court properly weighed the probative value of the photographs against their prejudicial effect and did not abuse its discretion in doing so.

II.    Fees

Spieker also contends that the court erred in imposing the cost of community custody supervision as part of his felony sentence because he was indigent. Supervision fees are discretionary legal financial obligations and may be waived by the trial court. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). Spieker cites State v. Dillon "as authority to strike the supervision fees imposed on an indigent defendant." The State argues that Dillon is not applicable here because it did not rule that supervision fees could not be imposed against an

indigent defendant but only that imposition of such fees was inconsistent with the trial court's stated intent. However, the record in this case is very similar to that in Dillon. Here, as in Dillon, the trial court indicated its intent to impose only mandatory LFOs and restitution and to waive discretionary fees. See id. Neither court mentioned supervision fees during sentencing. See id. Accordingly, as in Dillon, it appears that the trial court intended to waive all discretionary LFOs and inadvertently imposed the supervision fees. See id.

The State also argues that, even if imposition of supervision fees was inconsistent with the trial court's intent, the written judgment and sentence controls over any contradictory statement in the court's oral pronouncement, citing State v. Huckins, 5 Wn. App. 2d 457, 469–70, 426 P.3d 797 (2018). Spieker responds that the inclusion of the "preprinted boilerplate" requiring supervision fees is more akin to a scrivener's error or clerical mistake than a contradictory statement.

Spieker has the better argument here. The court did not make any explicit statement regarding the supervision fees at sentencing, much less an expressly contradictory one. As in Dillon, "it appears that the trial court intended to waive all discretionary LFOs[ ] but inadvertently imposed supervision fees because of its location in the judgment and sentence." 12 Wn. App. 2d at 152. The remedy for such a clerical or scrivener's error is remand to the trial court for correction of the judgment and sentence. In re Pers. Restraint of Mayer, 128 Wn. App. 694, 701–02, 117 P.3d 353 (2005).

Remanded to strike supervision fees consistent with this opinion, otherwise affirmed.

WE CONCUR: